[Cite as *State v. Jennings*, 2017-Ohio-8224.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 104626

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## HERMAN L. JENNINGS

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-13-580703-A

**BEFORE:** S. Gallagher, J., Keough, A.J., and Stewart, J.

**RELEASED AND JOURNALIZED:** October 19, 2017

**ATTORNEY FOR APPELLANT**

John P. Parker
988 East 185th Street
Cleveland, Ohio   44119


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

By:   Blaise D. Thomas
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio   44113

SEAN C. GALLAGHER, J.:

{¶1} Herman Jennings appeals his convictions for murder, one count of aggravated robbery, and three counts of robbery, each with a repeat violent offender specification. We affirm.

{¶2} In December 2013, Jennings was named in a 16-count indictment charging him with aggravated murder, murder, two counts of kidnapping, two counts of aggravated robbery, four counts of robbery, two counts of felonious assault, two counts of theft, petty theft, and having weapons while under disability, along with the associated specifications, including one- and three-year firearm specifications, repeat violent offender specifications, and notice of prior conviction.

{¶3} The case proceeded to trial, and the jury heard evidence and testimony about a robbery gone wrong where Jennings's accomplice was shot and killed by the one of the victims. The two attackers, dressed in black with their hands and heads covered, attempted to rob two victims in the driveway of their house. As the victims sat in a vehicle about to leave, the driver-side door was opened by one of the assailants. One victim was dragged from the driver's seat and struck on the head with a metal object. During the attack, that victim was able to retrieve a legally possessed firearm from the driver-side door and shoot one of the masked assailants, later identified as Waymone Williams. Williams died from the wounds.

{¶4} Jennings ran after the other victim, who was trying to retreat into the house. Jennings grabbed the victim's purse, causing her to fall to the ground, and fled the scene with it. After securing the scene of the crime, the police discovered the stolen purse and its contents spread across the yard. Additionally, they discovered a black "doo-rag" and a pair of latex gloves. Each glove and the doo-rag contained DNA belonging to Jennings.

{¶5} The police also discovered a vehicle in the area that was titled to Williams's mother. The keys found on Williams's body belonged to the vehicle. Inside the vehicle was a cell phone, that also belonged to Williams's mother. According to the police, the last call made was approximately 90 minutes before the attack, the call being made to a contact named "HERM."

{¶6} The jury found Jennings not guilty of aggravated murder, two counts of felonious assault, and one count each of aggravated robbery, robbery, and having weapons while under disability. However, the jury found Jennings guilty of murder, one count of aggravated robbery, and three counts of robbery, each with the repeat violent offender specification.

{¶7} Jennings was sentenced to 15 years to life on the murder count. Two of the robbery counts merged with the aggravated robbery, with the state electing that he be sentenced on the aggravated robbery charge. The court imposed a ten-year sentence on the aggravated robbery count. The aggravated robbery and murder sentences were ordered to run concurrently. The court imposed a seven-year sentence on the remaining

robbery charge, to be served consecutively to the murder and aggravated robbery counts, for a total of 22 years to life in prison.

**{¶8}** Jennings appeals, raising seven assignments of error.[1]

**{¶9}** In Jennings's first assignment of error, he claims the trial court created a structural error by replacing a juror during deliberations, or in the alternative, that the court was required to conduct a hearing to ascertain the reason for the juror's disappearance. According to Jennings, the replaced juror refused to convict him and that was the reason for the juror's refusal to continue deliberations. He bases his argument on the fact that, at one point in the deliberations, the jury asked the trial court: "What happens if we're in disagreement about all of the counts, because we are in disagreement as to whether the defendant was even proven to be on the scene that night." The trial court answered tersely, with the consent of all parties, telling the jury to "keep deliberating." Jennings's argument is entirely based on federal law and mere speculation.

**{¶10}** Under Ohio law, "a trial judge is empowered to exercise 'sound discretion to remove a juror and replace him with an alternate juror whenever facts are presented which convince the trial judge that the juror's ability to perform his duty is impaired.'" *State v. Brown*, 2d Dist. Montgomery No. 24541, 2012-Ohio-1848, ¶ 46, quoting *State v. Hopkins*, 27 Ohio App.3d 196, 198, 500 N.E.2d 323 (11th Dist.1985). (Other citations

---

[1]Jennings originally assigned eight errors for review. Subsequent to filing his appellate brief and oral argument, Jennings moved to withdraw his second assignment of error. Under separate order, the motion was granted.

omitted.) "'[S]ound discretion has long meant a discretion that is not exercised arbitrarily or willfully, but with regard to what is right and equitable under the circumstances and the law, and directed by the reason and conscience of the judge to a just result." *Woodards v. Cardwell*, 430 F.2d 978, 982 (6th Cir.1970).

{¶11} Crim.R. 24(G) and R.C. 2945.29 govern the removal and replacement of jurors during criminal trials. *State v. Zaragoza*, 2d Dist. Montgomery No. 26706, 2016-Ohio-144, ¶ 18, citing *State v. Cunningham*, 2d Dist. Clark No. 10-CA-57, 2012-Ohio-2794, ¶ 45. R.C. 2945.29 permits a court to replace a juror with an alternate "[i]f, before the conclusion of the trial, a juror becomes sick, *or for other reason* is unable to perform his duty[.]" (Emphasis added.) "[T]he substitution of an alternate juror for a regular juror for reasonable cause is within the prerogatives of the trial court and does not require the consent of any party." *State v. Gaines*, 8th Dist. Cuyahoga No. 82301, 2003-Ohio-6855, ¶ 38, citing *United States v. Warren*, 973 F.2d 1304, 1308-1309 (1992). Neither R.C. 2945.29 nor Crim.R. 24 requires the court to conduct a hearing to confirm the juror's inability to fulfill her service. *Id.* at ¶ 39.

{¶12} Crim.R. 24(G)(1) also allows the court to replace a juror after deliberations have begun. "If an alternate replaces a juror after deliberations have begun, the court must instruct the jury to begin its deliberations anew." Crim.R. 24(G)(1). "'The purpose of such instruction is to negate any possibility of coercion or intimidation of the substitute juror.'" *State v. Sales-Hilton*, 9th Dist. Summit No. 26351, 2012-Ohio-5651, ¶ 16, quoting *State v. Elersic*, 11th Dist. Lake Nos. 2000-L-062 and 2000-L-164,

2001-Ohio-8787, citing *State v. Miley*, 77 Ohio App.3d 786, 791-793, 603 N.E.2d 1071 (12th Dist.1991). The trial court followed the procedure set forth in Crim.R. 24.

**{¶13}** Tellingly, Jennings's entire argument is based on the proposition of federal law that erroneously removing a juror is structural error that requires a new trial. In support, Jennings cites federal cases that interpret Fed.R.Crim.P. 23(b), for example, *United States v. Curbelo*, 343 F.3d 273, 278 (4th Cir.2003); *United States v. Hernandez*, 862 F.2d 17, 22 (2d Cir.1988); and *United States v. Brown*, 823 F.2d 591, 596 (D.C.Cir.1987). Fed.R.Crim.P. 23(b) deals with the removal of a juror and proceeding with an 11-juror panel, which has no corresponding state civil rule. [2] Under Fed.R.Crim.P. 23(b), the court may only remove a juror in that instance for "good cause" because without that, structural error occurred. No such "good cause" requirement is required under Crim.R. 24(G)(1), the closest state analog that authorizes a court to remove and replace a juror after deliberations begin for any reason that precludes the juror from performing her obligations. Failing to return is a sufficient basis to remove a juror in Ohio. *State v. Gleason*, 65 Ohio App.3d 206, 210, 583 N.E.2d 975 (1st Dist.1989) (replacing a juror who failed to appear to avoid a delay in the proceedings is not an abuse of discretion); *Sales-Hinton* at ¶ 15 (court was left with "little choice" in replacing a juror with an alternate after juror refused to return to court). Jennings failed to support his argument with relevant authority as required under App.R. 16(A)(7). This

---

[2]Jennings also cites *Sullivan v. Louisiana*, 508 U.S. 275, 282, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), but *Sullivan* dealt with an erroneous jury instruction.

alone is dispositive; any attempt on our part to reverse would require us to create and support arguments not advanced by Jennings.

{¶14} Even if we considered Jennings's arguments under Crim.R. 24(G)(1), we would have to resort to rank speculation because the record is silent as to the existence of a "holdout" juror or as to any conversations outside of the deliberative process that occurred between the jurors regarding the case — the juror being replaced contacted the court's bailiff and another juror to explain that she had work obligations precluding her from returning to deliberations. We must presume regularity, but Jennings insists that we presume irregularity. In other words, without supporting evidence in the record, Jennings would have us assume that the trial court abused its discretion in replacing a juror by failing to ensure the deliberations were not compromised based on his speculative misgivings that cannot be easily dispelled by the record. Jennings is flipping the standard on its head.

{¶15} Nothing in the record indicates that any one juror, much less the juror actually replaced, prevented the jury from reaching a decision. Although there were several questions asked, none indicated that the jury was actually deadlocked and unable to resolve the disagreement. *See State v. Howard*, 42 Ohio St.3d 18, 537 N.E.2d 188 (1989), paragraph two of the syllabus. Jennings's claim that the replaced juror was a holdout is mere speculation.

{¶16} Further, the reason for the juror's inability to complete her service was known: the replaced juror was unable to continue her service because of work

responsibilities. The trial court, in exercising her sound discretion, accepted that excuse, noting that the jurors had been kept well beyond what was originally intended. The juror also contacted the court's bailiff, an officer of the court, reiterating what was already communicated to the other juror. Any delay associated with having the missing juror contacted a third time or issuing a bench warrant to be executed at her place of work to forcibly compel attendance could be considered impractical in light of the fact the panel had only deliberated for one day at that point.

{¶17} Most important, and contrary to Jennings's argument, jurors are not precluded from communicating with each other in general; they are only precluded from discussing the case outside the deliberation at the close of all evidence. As the trial court unambiguously instructed the jury in this case, "[m]ost important, ladies and gentlemen, you may not discuss the case among yourselves or with anyone else until all of the evidence has been presented and I've instructed you on the law and ordered you to begin your deliberations." Tr. 503:21-504:1. The fact that the jurors had a permissible conversation is not in and of itself error as Jennings suggests.

{¶18} To follow Jennings's logic, trial courts would have to conduct an inquisition into each and every conversation had by the jurors upon returning to court. Courts are not required to undergo such an inquiry. Jennings is asking us to presume that an irregularity occurred based on the fact of a permissible conversation having occurred — presumably encouraged by the state's improvident accusation that the jurors' conversation about attendance somehow violated the trial court's instruction not to discuss the case.

The record indicates that the jurors' conversation about one having to return to work, did not violate the trial court's admonishment, which prohibited the jurors from discussing the guilt or innocence without all jurors present.

{¶19} Regardless, the black letter law in Ohio is unambiguous. A trial court does not abuse its discretion by replacing a juror who is unable to complete her service in order to avoid a delay in the trial process. *Gleason*, 65 Ohio App.3d 206, 210, 583 N.E.2d 975; *Sales-Hinton*, 9th Dist. Summit No. 26351, 2012-Ohio-5651, ¶ 15. Further, there is no requirement under Crim.R. 24(G) for a trial court to conduct an evidentiary hearing to corroborate the juror's reason for not appearing or to investigate each and every conversation jurors have outside the courtroom. *Gleason*. Jennings has not cited a single Ohio case supporting his interpretation of Ohio law.[3] Based on the arguments as presented and the law as it exists in Ohio, Jennings's first assignment of error is overruled.

{¶20} In his third assignment of error, Jennings claims that the death of the co-conspirator cannot be the basis of the felony murder. According to Jennings, the victim's first shot did not kill the attacker; it was the subsequent shots that did, and therefore the death was not proximately caused by the aggravated robbery. Although Jennings mentioned the manifest weight of the evidence standard of review, in light of the

---

[3]Jennings cites *State v. Mole*, 149 Ohio St.3d 215, 2016-Ohio-5124, 74 N.E.3d 368, in which it was held that R.C. 2907.03(A)(13) irrationally imposes strict liability on peace officers for certain sex offenses when there is no occupation-based relationship between the offender and the victim. It is unclear how *Mole* is relevant.

fact that Jennings is not challenging the credibility of the witnesses but instead is focusing on the elements of the offense, we construe this assignment of error as challenging the sufficiency of the evidence. A claim of insufficient evidence raises the question whether the evidence is legally sufficient to support the verdict as a matter of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541.

**{¶21}** The felony murder statute provides that "[n]o person shall cause the death of another as a proximate result of the offender's" committing an offense of violence. R.C. 2903.02. "Proximate result" is defined as the direct, natural, reasonably foreseeable consequence of one's action when viewed "in the light of ordinary experience." *State v. Gibson*, 8th Dist. Cuyahoga No. 98725, 2013-Ohio-4372, ¶ 35, quoting *State v. Ervin*, 8th Dist. Cuyahoga No. 87333, 2006-Ohio-4498, and *State v. Dixon*, 2d Dist. Montgomery No. 18582, 2002-Ohio-541.

**{¶22}** Jennings and his co-conspirator attempted to rob the victims while armed with a handgun.

> The natural inclination of persons present during a robbery to forcibly defend themselves, their family and friends, and their property from theft and criminal aggression is a primal human instinct. Every robber or burglar knows when he attempts his crime that he is inviting dangerous resistance. Add to this highly charged atmosphere the use of a firearm to facilitate the robbery, and the risk of serious physical harm or death to any person present, be it the intended victims, bystanders, or the wrongdoers themselves, becomes highly foreseeable.

*Dixon* at 18; *see also State v. Burt*, 8th Dist. Cuyahoga No. 99097, 2013-Ohio-3525, ¶ 25 (death would not have occurred but for defendant's acting in concert with the decedent in robbing the victim at gunpoint, who caused the death by defending himself). In this case,

one of the victims shot Jennings's co-conspirator in self-defense. The co-conspirator's death was directly caused by the aggravated robbery in which Jennings willingly participated. Jennings's conviction was not against the sufficiency of the evidence.

{¶23} In his fourth assignment of error, in reliance on *State v. Hood*, 135 Ohio St.3d 137, 2012-Ohio-6208, 984 N.E.2d 1057, ¶ 21, Jennings claims that cell phone records, admitted as business records, were actually prepared in anticipation of litigation because the cell-phone company only releases the records upon receiving a court order and not all employees have access to the private information. According to Jennings, if a business record is prepared in anticipation of litigation, the hearsay exception under Evid.R. 803(6) no longer applies. Jennings's reliance on *Hood* is misplaced. In that case, the Ohio Supreme Court held, in the context of the Confrontation Clause, that

> [e]ven when cell-phone companies, in response to a subpoena, prepare types of records that are not normally prepared for their customers, *those records still contain information that cell-phone companies keep in the ordinary course of their business*.

(Emphasis added.) *Id.* at ¶ 36, citing *United States v. Yeley-Davis*, 632 F.3d 673, 679 (10th Cir. 2011). *Hood* resolved the conflict between what is admissible in general versus that which is admissible under the Confrontation Clause. *Hood* is inapplicable to Jennings's argument. He is not claiming any Confrontation Clause violation, and he has not otherwise provided authority in support of a claimed error as required by App.R. 16(A)(7). The fourth assignment of error is overruled.

{¶24} In the fifth assignment of error, Jennings argues that the trial court erred in denying a challenge under *Batson v. Kentucky*, 476 U.S. 79, 96, 106 S.Ct. 1712, 90

L.Ed.2d 69 (1986). "In *Batson*, the United States Supreme Court established a three-step inquiry for trial courts to adjudicate claims of race-based challenges to jurors." *State v. Johnson*, 144 Ohio St.3d 518, 2015-Ohio-4903, 45 N.E.3d 208, ¶ 21, citing *Batson* at 96. The three steps are (1) "a defendant must make a prima facie case that the prosecutor is engaged in racial discrimination"; (2) "if the defendant satisfies that burden, the prosecutor must provide a racially neutral explanation for the challenge"; and (3) "the court must decide, based on all the circumstances, whether the defendant has proved purposeful racial discrimination." *Id.,* citing *Batson* at 98.

**{¶25}** In order to make a prima facie case of discrimination, the defendant must demonstrate that members of the defendant's race were "substantially underrepresented on the venire from which his jury was drawn," or that the jury venire was "selected under a practice providing the opportunity for discrimination." *Batson* at 95.

**{¶26}** In this case, Jennings failed to make a prima facie case of discrimination. The record reflects that the prosecutor struck one juror of the same ethnicity as Jennings, but there is no record as to the racial composition of the venire. Without being able to make a prima facie case of racial discrimination, we need not consider the prosecutor's race-neutral explanation or the trial court's decision. Accordingly, Jennings's fifth assignment of error is overruled.

**{¶27}** In the sixth and seventh assignments of error, Jennings contends that the jury instruction on "confirmation bias" was inadequate, or in the alternative, that his trial counsel was ineffective for failing to seek an instruction on "confirmation bias"

altogether. Jennings has provided no authority requiring or even permitting such an instruction. His citations and arguments only define how some experts interpret and apply "confirmation bias." App.R. 16(A)(7). Appellate courts are not required to construct arguments on behalf of either party. *State v. Gordon*, 9th Dist. Summit No. 28331, 2017-Ohio-7147, ¶ 43. We overrule both assignments of error.

**{¶28}** Finally, in the eighth assignment of error, Jennings claims that his conviction should be reversed because of cumulative error. Having found no error, harmless or otherwise, we overrule the eighth and final assignment of error.

**{¶29}** Jennings's convictions are affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


SEAN C. GALLAGHER, JUDGE

MELODY J. STEWART, J., CONCURS;
KATHLEEN ANN KEOUGH, A.J., DISSENTS WITH SEPARATE DISSENTING OPINION

KATHLEEN ANN KEOUGH, A.J., DISSENTS WITH SEPARATE DISSENTING OPINION:

{¶30} I respectfully dissent. I would find merit in Jennings's first assignment of error, that the discharge of a juror during deliberations without legal justification and without a hearing violated Mr. Jennings's right to a fair trial under the Sixth and Fourteenth Amendments of the U.S. Constitution, the Ohio Constitution, and Crim.R. 24. The majority contends that Jennings's arguments on appeal are based entirely on speculation that Juror #1 was a holdout and would have acquitted Jennings on all counts. Speculation exists, however, because the court did not conduct at the very least a minimum inquiry into Juror #1's sudden unavailability or whether Juror #1 could resume deliberations.

{¶31} To understand why a minimum inquiry should have been conducted, a more detailed context of the deliberation process in this case must be understood. The jury received the case to begin deliberations on Thursday, August 27, 2015. On Friday, August 28, 2015, the jury resumed deliberations. During the morning deliberations, the court was notified that the jury had three questions. After conferring with both parties, the court answered the questions as agreed. Later that morning, the jury again submitted three questions, which the court answered after meeting the parties.

{¶32} At 12:30 p.m., the jury again notified the court that it had questions, this time submitting five questions. The second question asked: "What happens if we're in disagreement about all of the counts, because we are in disagreement as to whether the

defendant was even proven to be on the scene that night." (Tr. 1617.) The court met with the parties, and in response to the second question, the court instructed the jury to "keep deliberating." (Tr. 1618.) At the end of deliberations on Friday, the jury retired with instructions to return on Monday, August 31. The final instruction to the jury was:

> And mostly, ladies and gentlemen, while you're on break, you cannot ring one another up and discuss it one on one. It's only when all twelve of you are together in that jury room that you can consider that you've been deliberating. Fair enough?

(Tr. 1620.) The jury responded affirmatively, and none of the jurors indicated to the court that they could not return on Monday.

{¶33} Nevertheless, on Monday, August 31, the court stated on the record that Juror #1 called another juror and then contacted the court indicating "that she was starting work that day * * * and that she was getting a promotion and she was informed if she failed to show up, her job was in jeopardy." (Tr. 1621.)[4]

{¶34} The court noted that the jury was from a pool that reported on Wednesday, August 19 and that their service would have terminated on August 26. The court stated, "I don't believe that any of us anticipated when this trial began that we would go into yet another week, so I do believe that the — it's a legitimate excuse and I'm comfortable in putting the first alternate in." (Tr. 1621-1622.) The state had no objection with

---

[4]Although the record seems to indicate that the court's bailiff received the communication from Juror #1, it is unclear if the communication was by voicemail or if the bailiff actually spoke to the juror. At no time did the bailiff state on the record the nature or circumstances of the conversation.

replacing Juror #1 with Alternate #1, but noted that Juror #1 violated the juror conduct rules by contacting another juror.

**{¶35}** The defense objected stating that Juror #1 never indicated that a scheduling conflict could exist and that despite this conflict, she still needed to appear for deliberations. Additionally, the defense requested the court to conduct at the very least a minimal inquiry whether there was a basis independent of her job or whether some other factor was preventing her from being there. The defense suggested that it was possible based on a jury question submitted Friday, that there was a divide in the jury. Based on that question, the defense thought it was proper to inquire as to whether or not some sort of coercion or manipulation during deliberations may have been the cause for Juror #1's absence.

> We would like some minimum inquiry as to whether or not there's a basis independent of her job that is keeping her from being here, namely whether or not she was being bullied back there. If she was, that would be a basis for a mistrial.

(Tr. 1624.)

**{¶36}** The trial court noted Jennings's objection and replaced Juror #1 with Alternate #1. The court then instructed the existing jury to share the juror questions and court communications on those questions with Alternate #1. The court also instructed the jury to start their deliberations anew.

**{¶37}** After Alternate #1 was seated, the defense orally moved for a mistrial based on juror removal and the lack of judicial intervention to ensure that it was actually Juror #1 who phoned into the court, and the juror's failure to appear was not a result of

coercion during deliberations based on the juror questions. The defense also took issue with the fact that (1) the juror was not instructed to appear before the court despite the conflict; (2) the explanation about the juror's job was accepted without any further inquiry; and (3) the court had the authority to contact the juror's employer to explain the circumstances. The trial court summarily denied Jennings's motion.

{¶38} The relevant case law interpreting Crim.R. 24(G)(1), provides that the court must have a legitimate basis for the removal and replacement of an alternative. *See United States v. Humphrey*, 34 F.3d 551, 557 (7th Cir.1994); *United States v. Warner*, 498 F.3d 666 (7th Cir.2007). An abuse of discretion may be found "'if the juror was discharged without factual support or for a legally irrelevant reason.'" *Warner* at 698, quoting *United States v. Edwards*, 303 F.3d 606, 631 (5th Cir.2002).

{¶39} Reviewing the relevant case law where a trial court's decision for removing a juror was upheld, the record was clear and established the basis and justification for removal. In those cases, an inquiry was made with the removed juror and other members of the jury.

{¶40} In *State v. Cunningham*, 2d Dist. Clark No. 10-CA-57, 2012-Ohio-2794, the trial court was notified by the jury foreperson during deliberations that one of the jurors was struggling with comprehending the deliberation process. After conferencing with defense counsel, the prosecutor, the jury foreperson, and other members of the court staff, the court decided to remove the juror based on the juror's cognitive problems in comprehending the trial process concluding that there could not be a fair and impartial

trial with the juror's continued presence. The Second District found no abuse of discretion in the juror's removal because the evidence presented to the trial court put the juror's ability to comprehend the trial process into question.

{¶41} In *State v. Zaragoza*, 2d Dist. Montgomery No. 26706, 2016-Ohio-144, the trial court removed a juror after interviewing the jury foreperson, the bailiff, and the removed juror, finding that the juror was unstable, disruptive to the deliberations, and was a safety threat to the female jurors. The Second District found no abuse of discretion by the trial court based on the well-developed record and that the court was able to personally observe and judge the removed juror's demeanor. The appellate court concluded that a fair trial with the continued juror's presence was an impossibility.

{¶42} In *State v. Hunt*, 10th Dist. Franklin No. 12AP-1037, 2013-Ohio-5326, the Tenth District found no abuse of discretion in replacing a juror with an alternate after the juror asked to be replaced by the court because she was uncomfortable with evidence depicting dead bodies. The juror indicated that she would not be able to look at the evidence.

{¶43} In *State v. Sales-Hinton*, 9th Dist. Summit No. 26351, 2012-Ohio-5651, the trial court replaced a juror with an alternate during deliberations after the juror confirmed with the judge that she would not return to jury service because her doctorate program was scheduled to begin. This scheduling conflict was known to the court during the voir dire process, yet the juror was empaneled. The Ninth District found no abuse of discretion in replacing the juror with an alternate because the juror's open refusal to

return to court to continue deliberations "left the trial court with little choice but to replace [the juror] with an alternative" and the replacement was "an attempt to resolve the case in the most efficient manner." *Id*. at ¶ 15.

{¶44} In this case and unlike all of the cases cited above, no inquiry was made with the juror or remaining jurors prior to her removal. As the defense pointed out with the trial court,

> [T]he fact that the juror was replaced willy-nilly, particularly on the heels of a question provided late last Friday, suggesting that some people — I believe it was said, what do we do if some of us don't even believe [Jennings] was there, suggest she could have potentially been within a group that was in the minority on the question and, you know, right now we don't have any way of knowing if her failure to show up this morning was a result of how she was treated during deliberations on Friday. It's all speculation, and without any input from her, you know, I think it was an error for the Court to simply remove her and replace her with an alternate and for that reason we request a mistrial.

(Tr. 1632.)

{¶45} I would find that the trial court at a minimum should have at least contacted Juror #1 to ensure that the juror's reasoning was consistent with what was relayed to the court. Although neither R.C. 2945.29 nor Crim.R. 24 requires the court to conduct such inquiry with the juror, this minimal interaction would ensure that the jury deliberation process is free from manipulation and coercion. Additionally, jury service can sometimes be inconvenient, but there is a difference between being incapable to serve and inconvenient in serving. The court's justification for removal and replacement in this case may very well be a legitimate basis, however, on this record, I would find that the court abused its discretion by failing to ensure that the jury deliberation process was not

compromised by any coercion or misconduct inside the jury room or outside the courthouse.

{¶46} Additionally and equally problematic, is the fact that after the trial court was made aware that Juror #1 contacted another juror on the panel, no inquiry was made to ensure that the only discussions the two jurors had was about Juror #1's decision not to return to jury service. Despite this contact, the trial court did not question the contacted juror, who remained on the panel to continue deliberations, to determine the nature of the conversation and the circumstances surrounding the contact.

{¶47} Based on this out-of-court contact, the sudden unavailability of Juror #1, and the circumstances of the deliberations and questions raised on the prior day during deliberations, I find that it was unreasonable for the trial court to not conduct a minimal inquiry as to Juror #1's unavailability prior to removal. I would reverse Jennings's conviction on this basis and remand for a new trial.