[Cite as *State v. Setty*, 2020-Ohio-4318.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ADAMS COUNTY

| | | |
|---|---|---|
| State of Ohio, | : | Case No. 20CA1106 |
| Plaintiff-Appellee, | : | |
| v. | : | <u>DECISION AND</u> <u>JUDGMENT ENTRY</u> |
| Jerry Setty, | : | |
| Defendant-Appellant. | : | **RELEASED 9/01/2020** |

<u>APPEARANCES</u>:

R. Jessica Manungo, Assistant State Public Defender, Office of the Ohio Public Defender, Columbus Ohio for appellant.

C. David Kelley, Adams County Prosecutor and Kris D. Blanton, Adams County Assistant Prosecutor, West Union, Ohio, for appellee.

Hess, J.

{¶1}    Jerry Setty appeals his conviction for operating a motor vehicle under the influence of alcohol or drugs. Setty contends that his conviction was against the manifest weight of the evidence because the evidence was contradictory and the jury mistook Setty's belligerence and anger for intoxication. Setty argues that although all of the officers testified that Setty had erratic behavior, slurred speech, and bloodshot, glassy eyes, they disagreed about the source of the alcohol odor. One of the arresting officers testified that the smell of alcohol was coming from Setty's vehicle and the other testified that it was coming from Setty's breath. He also argues that, while he was admittedly rude and belligerent during the traffic stop, his anger is not synonymous with intoxication.

{¶2}    However, four different law enforcement officials who observed Setty's behavior testified that he exhibited slurred speech, bloodshot, glassy eyes, and had the

odor of alcohol on his breath. They each testified that Setty was under the influence of alcohol, marijuana or some combination of the two. Additionally, the body camera footage of Setty's behavior and speech from three of the officers present during the traffic stop was shown to the jury. This constituted competent, credible evidence that Setty was operating a motor vehicle under the influence of alcohol and/or marijuana. The manifest weight of the evidence supports the jury's verdict. We reject Setty's first assignment of error.

{¶3}    Setty also contends that the trial court erred when it denied his motion for a mistrial after the jury heard his brother's derogatory statements about the police chief and one of the juror's mother that were captured on the body camera footage and shown to the jury. Setty's brother accused the police chief of engaging in sexual relations with Juror No. 375's mother. The trial court questioned Juror No. 375 and determined that he could no longer be a fair and impartial juror. The trial court excused him, replaced him with an alternate juror, and denied Setty's motion for a mistrial.

{¶4}    First, we find that Setty invited any purported error because he jointly submitted the body camera footage, entirely unedited, as evidence at trial. Even if we review the assignment of error on the merits, we find that the record does not support Setty's contention that the entire jury was tainted. The trial court questioned and subsequently excused Juror No. 375 after he stated that he could not be fair and impartial. Then, the trial court asked the entire jury whether there was anything from the prior day's evidence that would impair their impartiality and determined that the remaining jurors could continue to be fair and impartial. The trial court's decision to replace Juror No. 375 with an alternate was a sound exercise of its discretion and its decision denying Setty's

motion for a mistrial was not unreasonable, arbitrary, or unconscionable. We overrule Setty's second assignment of error and affirm the judgment of the trial court.

## I. PROCEDURAL HISTORY

{¶5}   In July 2019, Jerry Setty was arrested on one count of operating a motor vehicle while under the influence of alcohol or drugs, a first-degree misdemeanor in violation of R.C. 4511.19(A)(1)(a).  A jury trial was held in October 2019, which produced the following evidence.

{¶6}   Adams County Sheriff Deputy Parks testified that he stopped Setty because the taillights on his truck were not illuminated. However, upon stopping the truck, Setty and his passenger, twin brother Terry Setty, immediately pushed their hands through the truck's open windows and screamed for Deputy Parks not to shoot them. Deputy Parks immediately called for backup assistance due to this unusual behavior. Deputy Parks was wearing a body camera and the footage from the traffic stop was played for the jury. On the footage, Setty is shown getting out of the truck. Both Setty and his brother made statements that were unresponsive to questions by Deputy Parks. Setty's brother denied having beer in the truck, though Deputy Parks had not asked any questions about alcohol yet.  Deputy Parks explained that the stop was related to the lack of illuminated taillights on the truck.

{¶7}   Deputy Parks asked Setty if he had been drinking and Setty denied it. Deputy Parks stated that he could smell alcohol, but Setty denied the smell was coming from him and suggested it might be coming from his brother. Setty refused to perform a field sobriety test. Setty's behavior grew more and more belligerent towards law enforcement and his speech was heavily dosed with profanity and insults. In response to

Deputy Parks's statement that he can smell alcohol coming from inside the vehicle, Setty responded, "Well you probably smell your asshole." To determine whether the smell of alcohol was coming from the vehicle or from Setty's breath, Deputy Parks isolated Setty from the truck and asked him if he had consumed alcohol and Setty again denied it. Sergeant Daniels arrived to assist Deputy Parks and told Setty that he was slurring his speech and that his eyes were bloodshot. Setty was repeatedly asked to take a field sobriety test and a urine test and he refused.

{¶8} Deputy Parks testified that after he isolated Setty, he was able to observe that he had slurred speech, bloodshot, glassy eyes, and he could smell alcohol coming from Setty's breath. Setty was patted down for weapons and Deputy Parks arrested Setty and placed him in handcuffs in the backseat of the patrol car. However, a few minutes later Setty implied that he had a weapon in his boot, so law enforcement removed Setty from the backseat and checked Setty's boots, which contained no hidden weapons. Setty told the officers he was "playing." Deputy Parks testified that he had a lengthy interaction with Setty and that based on his training, experience, and observation of Setty that evening, his actions and mental processes were appreciably impaired by alcohol and possibly marijuana.

{¶9} Sergeant Daniels testified that he was called to assist Deputy Parks. Sergeant Daniels was wearing a body camera and footage from it was played to the jury. Sergeant Daniels testified that based on his training, he observed Setty exhibiting slurred speech, red bloodshot eyes, an odor of alcohol and he could also detect an odor of marijuana. Sergeant Daniels testified that the truck Setty was driving was going to be towed and he took an inventory of its contents and discovered marijuana inside a purple

Crown Royal bag on the passenger side floorboard of the truck. Sergeant Daniels testified that both Setty and his brother were intoxicated.

{¶10} West Union Police Officer Bowling testified that he was called to assist Deputy Parks with the Setty traffic stop. Officer Bowling was also wearing a body camera and the footage was played for the jury. In the footage from Officer Bowling's camera, Setty states, "I might have did fucking marijuana, I'll agree, I'll agree on it. I have not been fucking drinking." Officer Bowling testified that he was having difficulty understanding Setty and his brother because both were slurring their speech and talking randomly and rapidly. Officer Bowling detected the smell of alcohol from the vehicle. Officer Bowling testified that based on his observations of Setty, he believed that he was under the influence of drugs or alcohol or some combination.

{¶11} In his brother's defense, Terry Setty testified that his brother had not been drinking that evening, but Terry had been and "had a buzz." Terry Setty testified that his brother does not drink because he had trouble with his pancreas years ago. Terry testified that he also smoked some marijuana that evening but that his brother had not.

{¶12} In rebuttal, Corrections Officer Johnson testified that he takes custody of inmates when they are brought to the jail and he was the officer that processed Setty's intake. Officer Johnson testified that Setty had the odor of alcohol on his breath, had slurred speech, and his behavior was erratic and consistent with someone who was under the influence. Officer Johnson testified that Setty threatened him and Deputy Parks during the intake process by stating, "he would find out where we lived and he would, and his brother would be at the bottom of our bed when we woke up that morning."

**{¶13}** The jury found Setty guilty of operating a motor vehicle under the influence and the trial court sentenced him to 20 days in the Adams County Jail, ordered a one-year license suspension, and assessed a total fine of $1,523.00.

## II. ASSIGNMENTS OF ERROR

**{¶14}** Setty assigns the following errors for our review:

1. The trial court violated Jerry Setty's rights to due process and a fair trial when it entered a judgment of conviction for operating a vehicle under the influence of alcohol against the manifest weight of the evidence. Fifth and Fourteenth Amendments, United States Constitution; Article I, Sections 10 and 16, Ohio Constitution; *State v. Thompson*, 78 Ohio St.3d 38, 387, 678 N.E.2d 541 (1997); T.p. 591-593.

2. The trial court erred by failing to grant Jerry Setty's motion for a mistrial after the jury heard derogatory and offensive remarks made regarding Juror-375's mother and the county's police chief. Fifth, Sixth, and Fourteenth Amendments to the United States Constitution; Section 16, Article I, Ohio Constitution; *Illinois v. Somerville*, 410 U.S. 458, 462-463, 93 S.Ct. 1066, 1069-1070, 35 L.E.2d 425, 429-430 (1973); *Arizona v. Washington*, 434 U.S. 497, 505-506, 98 S.Ct. 824, 830-831, 54 L.Ed.2d 717, 728-729 (1978); T.p. 337, 343, 394, 405-18, 424.

## III. LAW AND ANALYSIS

### A. Manifest Weight of the Evidence

**{¶15}** Setty challenges his conviction as against the manifest weight of the evidence and argues that there was no reliable evidence to prove that he was operating the vehicle under the influence of alcohol. He contends that law enforcement could not agree from where the smell of alcohol originated and they mistook his belligerence for drunkenness.

### 1. Standard of Review

**{¶16}** In determining whether a criminal conviction is against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable

inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that we must reverse the conviction. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 119. *State v. Phillips*, 4th Dist. Scioto No. 18CA3832, 2018-Ohio-5432, ¶ 23.

{¶17} To satisfy its burden of proof, the state must present enough substantial credible evidence to allow the trier of fact to conclude that the state had proven all the essential elements of the offense beyond a reasonable doubt. *See State v. Adams*, 2016-Ohio-7772, 84 N.E.3d 155, ¶ 22 (4th Dist.), citing *State v. Eley*, 56 Ohio St.2d 169, 383 N.E.2d 132 (1978), syllabus (superseded by state constitutional amendment on other grounds in *State v. Smith*, 80 Ohio St.3d 89, 684 N.E.2d 668 (1997)). However, it is the role of the jury to determine the weight and credibility of evidence. *See State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, 15 N.E.3d 818, ¶ 132. " 'A jury, sitting as the trier of fact, is free to believe all, part or none of the testimony of any witness who appears before it.' " *State v. Reyes-Rosales*, 4th Dist. Adams No. 15CA1010, 2016-Ohio-3338, ¶ 17, quoting *State v. West*, 4th Dist. Scioto No. 12CA3507, 2014-Ohio-1941, ¶ 23. We defer to the trier of fact on these evidentiary weight and credibility issues because it is in the best position to gauge the witnesses' demeanor, gestures, and voice inflections, and to use these observations to weigh their credibility. *Id.*; *State v. Wells*, 4th Dist. Lawrence No. 18CA23, 2019-Ohio-3799, ¶ 10-11.

### 2. Evidence of Impairment

**{¶18}** Setty argues that the police officers at the scene could not agree on where the smell of alcohol originated – from Setty or from Setty's truck – and they mistook Setty's belligerent behavior and speech as intoxication when it was "essentially Mr. Setty being Mr. Setty."

**{¶19}** The jury heard testimony from four officers that witnessed Setty's behavior, speech, conduct and appearance and each of the officers testified that Setty was under the influence of alcohol, marijuana, or a combination of both. Additionally, we have reviewed all of the footage taken from the three officers' body cameras during the traffic stop. This footage was shown to the jury and they were able to hear Setty's slurred speech and see Setty's intoxicated belligerence played out before them in the courtroom. Although the officers testified that, initially, they were not able to discern whether the odor of alcohol was coming from the truck or Setty's breath, they testified that they were able to isolate Setty from the truck and discern the odor of alcohol on Setty's breath. The jury was free to disbelieve the testimony of Terry Setty, Setty's twin brother, who was both admittedly "buzzed" that night and appeared intoxicated in the body camera footage. Likewise, the jury was free to reject Setty's trial counsel's argument that he was just angrily belligerent – not drunkenly belligerent.

**{¶20}** We conclude that Setty's conviction for OVI is not against the manifest weight of the evidence. After reviewing the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of witnesses, we do not agree with Setty that the trier of fact clearly lost its way and created such a manifest miscarriage of justice such that he is entitled to a new trial. This is simply not the " 'exceptional case in

which the evidence weighs heavily against the conviction[s].' " *Thompkins* at 387, quoting State v. *Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

## B. Motion for Mistrial

**{¶21}** For his second assignment of error, Setty contends that the trial court erred when it denied his motion for mistrial. The footage from the body cameras included offensive remarks made by Setty's brother about the police chief and Juror No. 375's mother. At the end of the first day of trial, the trial court recognized the need to speak to Juror No. 375 and the following morning this juror was separated and brought into the courtroom prior to the start of the second day of trial. Juror No. 375 stated that he could not be fair and impartial, the trial court excused him, and an alternate juror took his place.

**{¶22}** Setty moved for a mistrial on the ground that he believed the entire jury was tainted after hearing the video. The trial court denied the motion.

### 1. Standard of Review

**{¶23}** "Our analysis begins with the well-settled premise that the decision whether to grant a mistrial rests within a trial court's sound discretion, and its decision will not be reversed absent an abuse of that discretion." *State v. Daniels*, 4th Dist. Scioto No. 11CA3423, 2011–Ohio–5603, ¶ 10; *see also State v. Kulchar*, 4th Dist. Athens No. 10CA6, 2015–Ohio-3703, ¶ 38. " 'A trial court abuses its discretion when it makes a decision that is unreasonable, arbitrary, or unconscionable.' " *State v. Keenan*, 143 Ohio St.3d 397, 2015–Ohio–2484, 38 N.E.3d 870, ¶ 7; quoting *State v. Darmond*, 135 Ohio St.3d 343, 2013–Ohio–966, 986 N.E.2d 971, ¶ 34. A mistrial should not be granted based on an error or irregularity unless an accused's substantial rights are adversely affected. *Daniels* at ¶ 11; *see also State v. Daboni*, 4th Dist. Meigs No. 18CA3, 2018-

Ohio-4155, ¶ 75; *State v. Wharton*, 4th Dist. Ross No. 09CA3132, 2010–Ohio–4775, ¶ 25.

### 2. Offensive Language in Body Camera Footage

**{¶24}** Here the footage of the law enforcement officers' body cameras were marked as joint exhibits. At the final pretrial, Setty stated his desire to have the videos played in their entirety and requested no redactions. During Officer Bowling's testimony, footage from his body camera was shown. In the footage, Setty's brother makes derogatory statements about Juror No. 375's family members, including his belief that the police chief was engaged in sexual relations with a woman who, as it turned out, was Juror No. 375's mother.

**{¶25}** After the footage is played, Setty's trial counsel asks for a bench conference. She explained to the trial court and the prosecutor that Terry Setty's on camera derogatory remarks were about Juror No. 375's family. Setty's trial counsel suggested that the trial court should question Juror No. 375. The prosecutor stated that Setty reviewed all of the body camera footage, knew everything that was on them, and did not request that Juror No. 375 be excused from the jury during voir dire. The trial court determined that they would continue with the trial that day, research the legal issue overnight, and then make a decision the following morning concerning whether Juror No. 375 should be excused. Setty's trial counsel agreed and stated, "I'm fine with excusing [Juror No. 375]." After the conclusion of Officer Bowling's testimony, the trial was concluded for the day and the jury was instructed to report to the clerk the following day. The trial court addressed the issue again after the jury was excused. The trial court decided that when Juror No. 375 checked in with the clerk the following day, he would be

taken to the judge's chambers; if he was no longer able to give a fair and impartial verdict, the court would replace him with an alternate juror.

{¶26} The following day, the trial court informed counsel that Juror No. 375 was in the judge's chambers and would be asked, outside the presence of the other jurors, whether any of the statements made yesterday made him unable to perform his duties or follow his oath to be fair and impartial.   Either counsel could then make a motion to remove Juror No. 375 and the trial court would entertain it. The trial court also stated that when the full jury returns, it would ask them if anything they heard in or out of court made it so that they cannot be fair and impartial. If no juror indicated an inability to carry out their oath, then the trial court would find that the jury was not tainted.

{¶27} The trial court brought Juror No. 375 into the courtroom and asked him whether the portion of the footage where Setty's brother, Terry Setty, mentioned Juror No. 375's family and relatives created a bias or prejudice such that he could not be a fair and impartial juror. Juror No. 375 stated that he did not think that he could be fair and unbiased. The trial court invited the prosecutor and Setty's trial counsel to ask any additional questions of Juror No. 375, but both sides declined.   An alternate juror replaced Juror No. 375.

{¶28} Setty's trial counsel moved for a mistrial on the ground that the entire jury was tainted by the body camera footage contained in Joint Ex. 5. The trial court addressed that concern by stating that it would ask the jury as a whole more broadly whether there was anything in the proceedings the previous day that would create a bias and make them unable to fulfill their obligation to be fair and impartial.  After the jury, including the alternate juror, was seated, the trial court asked them if there was anything that happened

in court yesterday that made any of them feel that they were unable to perform their duties of being a fair and impartial jury.   The trial court stated for the record that none of the jurors indicated an inability to go forward.

**{¶29}** Under Ohio law, "a trial judge is empowered to exercise 'sound discretion to remove a juror and replace him with an alternate juror whenever facts are presented which convince the trial judge that the juror's ability to perform his duty is impaired.' " *State v. Brown*, 2d Dist. Montgomery No. 24541, 2012-Ohio-1848, ¶ 46, quoting *State v. Hopkins*, 27 Ohio App.3d 196, 198, 500 N.E.2d 323 (11th Dist.1985). " '[S]ound discretion has long meant a discretion that is not exercised arbitrarily or willfully, but with regard to what is right and equitable under the circumstances and the law, and directed by the reason and conscience of the judge to a just result." *Woodards v. Cardwell*, 430 F.2d 978, 982 (6th Cir.1970).

**{¶30}** Crim.R. 24(G) and R.C. 2945.29 govern the removal and replacement of jurors during criminal trials. *State v. Zaragoza*, 2d Dist. Montgomery No. 26706, 2016-Ohio-144, ¶ 18, citing *State v. Cunningham*, 2d Dist. Clark No. 10-CA-57, 2012-Ohio-2794, ¶ 45. R.C. 2945.29 permits a court to replace a juror with an alternate "[i]f, before the conclusion of the trial, a juror becomes sick, or for other reason is unable to perform his duty  * * *."  "[T]he substitution of an alternate juror for a regular juror for reasonable cause is within the prerogatives of the trial court and does not require the consent of any party." *State v. Gaines*, 8th Dist. Cuyahoga No. 82301, 2003-Ohio-6855, ¶ 38, citing *United States v. Warren*, 973 F.2d 1304, 1308–1309 (6th Cir.1992). Neither R.C. 2945.29 nor Crim.R. 24 requires the court to conduct a hearing to confirm the juror's

inability to fulfill his or her service. *Id.* at ¶ 39; *State v. Jennings*, 2017-Ohio-8224, 100 N.E.3d 93, ¶ 10-11 (8th Dist.).

**{¶31}** After Juror No. 375 was replaced, Setty's trial counsel moved for a mistrial on the ground that "there would be a taint to the entire jury after hearing the video." First, we find that Setty invited any purported error by agreeing to submit the body camera footage as joint exhibits, without any redaction. He cannot submit evidence to the jury and then move for a mistrial because his own evidence was too inflammatory or prejudicial. Under the invited error doctrine, it is well settled that "a party will not be permitted to take advantage of an error which he himself invited or induced the trial court to make." *State ex rel. Smith v. O'Connor*, 71 Ohio St.3d 660, 663, 646 N.E.2d 1115 (1995); *Lester v. Leuck*, 142 Ohio St. 91, 50 N.E.2d 145 (1943), paragraph one of the syllabus; *see also State v. Wilson*, 2017-Ohio-5724, 93 N.E.3d 1282, ¶ 38 (5th Dist.) (where defendant stipulated with the state to play videotapes in their entirety without redactions, appellate court held, "We find appellant invited error on any hearsay statements within the videotapes because he agreed to play them in their entirety").

**{¶32}** Additionally, Setty's argument is not only speculative, it is unsupported by the record. There was no evidence that Juror No. 375 discussed his reaction to the footage with other jurors. And, the trial court questioned the jury and none of the other jurors were prejudiced or biased by the footage.

**{¶33}** The trial court's decision to replace Juror No. 375 with an alternate was a sound exercise of its discretion and its decision denying Setty's motion for a mistrial was not unreasonable, arbitrary, or unconscionable. We overrule Setty's second assignment of error.

## IV. CONCLUSION

{¶34}  We overrule Setty's assignments of error and affirm the judgment of the trial court.

JUDGMENT AFFIRMED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED.  Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the ADAMS COUNTY COURT to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Abele, J.:  Concur in Judgment and Opinion.


For the Court


BY: _____
        Michael D. Hess, Judge


## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**