[Cite as *State v. Paul*, 2024-Ohio-1874.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | |
|---|---|
| STATE OF OHIO | C.A. No.     30504 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| ROCHELLE M. PAUL | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No.     CR 21 01 0285 |

DECISION AND JOURNAL ENTRY

Dated: May 15, 2024

SUTTON, Judge.

**{¶1}** Defendant-Appellant Rochelle Paul appeals her judgment of conviction in the Summit County Court of Common Pleas. This Court affirms.

I.

**{¶2}** Ms. Paul appeals from the judgment of the Summit County Court of Common Pleas finding her guilty of one count of murder in violation of R.C. 2903.02(A); one count of murder in violation of R.C. 2903.02(B); and one count of felonious assault in violation of R.C. 2903.11(A)(2). Ms. Paul was convicted of murder in the stabbing death of her co-worker, S.S.

**{¶3}** After Ms. Paul was arrested and charged, she filed a motion to suppress a confession she made to police officers in the hours following the murder. The trial court found that Ms. Paul waived her right to counsel and denied the motion to suppress. The case proceeded to jury trial where the following facts were adduced.

{¶4}     The State presented the testimony of several police officers who responded to the scene at Ms. Paul's home on the evening S.S. was killed.  The officers testified they responded to the scene and found the victim, S.S., with stab wounds and a large amount of blood present.  One police officer testified that he asked S.S. who attacked her, and she responded that Ms. Paul had attacked her.  That conversation was also captured on the officer's body camera.  The officers also testified Ms. Paul was arrested at the scene.

{¶5}     The State also presented the testimony of Ms. Paul's daughter, Q.P., who was present in the home on the evening S.S. was stabbed.  Q.P. testified when she and her mother returned home that evening, Q.P. went into the bedroom she was staying in to get ready for bed while her mother took a bath.  After her mother's bath, Q.P. testified her mother came into her room briefly to get her cigarettes but then immediately left the room.  Within about 3-5 minutes of her mother leaving the room, Q.P. testified she heard someone yell from the living room,  "[T.S.] come get your girl, she's stabbing me."  Q.P. left the bedroom to see what was going on in the living room.  When she entered the living room, she saw Ms. Paul on top of S.S. swinging her arm up and down.  Q.P. testified she had to pull her mother off of S.S., and then S.S. crawled over to her and was begging for help.  Q.P. pushed S.S. off her in a panic and then called the police.  She also testified that after the attack was over and before the police officers arrived, Ms. Paul went into the bedroom and changed her shirt, and then went into the kitchen and smoked a cigarette.

{¶6}     Ms. Paul testified as part of her defense.  Ms. Paul testified the victim, S.S., and she were co-workers at a Family Dollar store in Akron, Ohio.  Ms. Paul would occasionally give S.S. rides home from work and had offered to help S.S. because she had fallen on hard times.  On one occasion, Ms. Paul told S.S. to let her know if she ever needed a place to stay.  On December 24, 2020, S.S. showed up at the home Ms. Paul shared with her boyfriend, T.S., and asked if she could

stay there. Because it was Christmas Eve and S.S. had nowhere to go, Ms. Paul let her stay there. Ms. Paul and her boyfriend left that evening to travel to Philadelphia to spend Christmas with his family. They returned home about one week later, around the New Year, but stayed at home only briefly before they left again on a trucking trip. Ms. Paul's boyfriend was a long-haul truck driver and Ms. Paul would accompany her boyfriend on his trucking trips.

{¶7} Ms. Paul testified that when they returned home from the trucking trip around January 10, 2021, tensions began to simmer in the home because S.S. did not have any money for food or laundry. Ms. Paul also testified her boyfriend had indicated during one of their recent trips that he wished to engage in sexual activity with both S.S. and Ms. Paul. Ms. Paul testified she approached S.S. about her boyfriend's request, but S.S. had refused to engage in sexual activity with the couple.

{¶8} On January 12, 2021, Ms. Paul stated she was home with her boyfriend and S.S. Ms. Paul left the house to buy crack cocaine. When she returned to the house, she found S.S. dancing in front of and talking to Ms. Paul's boyfriend. Ms. Paul then left the home to drive to Canton to pick up her daughter, Q.P., for an overnight visit. Ms. Paul returned to Akron with her daughter, and they briefly stopped at Ms. Paul's home, where Q.P. met S.S. for the first time. Ms. Paul and her daughter then left and went to a friend's house where Ms. Paul drank alcohol and smoked marijuana. Around midnight, Ms. Paul returned to her home with Q.P. Ms. Paul testified when she pulled into the driveway, she saw her boyfriend looking out the window. When she entered the home, S.S. was adjusting her shirt and Ms. Paul's boyfriend was standing against the wall on the opposite side of the room.

{¶9} Ms. Paul testified after she took a bath that evening, she went out into the living room and saw her boyfriend hugging S.S. According to Ms. Paul, S.S. then confronted her and

told her T.S. was going to dump her the next morning. Ms. Paul claimed "[i]t got dark" right before she grabbed the knife and scissors that she used to stab S.S. During her testimony, Ms. Paul did not deny she stabbed S.S. Rather, she testified she stabbed S.S. because she was upset that S.S. was "trying to take [Ms. Paul's] life that [she] had worked hard to build" and ruin the promise of marriage that T.S. had given Ms. Paul a month earlier.

{¶10} The case was given to the jury for deliberation on the afternoon of Friday, September 30, 2022. When the jury returned on the afternoon of Tuesday, October 4, 2022, the trial court learned that one of the jurors in the original pool, Juror 9, had fallen ill and was unable to continue deliberations that afternoon. The trial court replaced Juror 9 with Juror Alternate 2. The trial court then realized it failed to give the jury an instruction to begin deliberations anew with the new juror, so after deliberating for only 37 minutes, the trial court removed Juror Alternate 2 from the jury. The trial court then seated Juror Alternate 3 for Juror 9 and instructed the jury to forget all previous deliberations and to start their deliberations from the beginning. Ms. Paul made a motion for a mistrial twice, once when Juror Alternate 2 was removed, and once when Juror Alternate 3 was seated. The trial court denied both of those motions for a mistrial.

{¶11} The jury returned a verdict of guilty on all three counts. Ms. Paul filed a timely appeal, assigning nine errors for our review.

II.

**ASSIGNMENT OF ERROR I**

**THE TRIAL COURT ERRED AS A MATTER OF LAW BECAUSE THE STATE FAILED TO ESTABLISH ON THE RECORD SUFFICIENT EVIDENCE TO SUPPORT THE CHARGES LEVIED AGAINST MS. ROCHELLE PAUL.**

## ASSIGNMENT OF ERROR V

**THE TRIAL COURT ERRED IN DENYING MS. ROCHELLE PAUL'S CRIMINAL RULE 29 MOTION FOR ACQUITTAL**.

**{¶12}** In her first and fifth assignments of error, Ms. Paul argues the State presented insufficient evidence to convict her of the charges. Specifically, Ms. Paul argues the State failed to establish she was the alleged perpetrator of the crime. For the following reasons, we disagree.

**{¶13}** Crim.R. 29(A) provides a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A Crim.R. 29 motion is asserted to test the sufficiency of the evidence. "Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." *State v. Bridgeman*, 55 Ohio St.2d 261 (1978), syllabus. Because the sufficiency of the evidence and Crim.R. 29 arguments require this Court to review the evidence to determine whether it was sufficient, we will review Ms. Paul's first and fifth assignments of error together. *See State v. Maxwell*, 9th Dist. Summit No. 24807, 2010-Ohio-4214, ¶ 7.

**{¶14}** "Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo." *State v. Williams*, 9th Dist. Summit No. 24731, 2009-Ohio-6955, ¶ 18, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). The relevant inquiry is whether the prosecution has met its burden of production by presenting sufficient evidence to sustain a conviction. *Thompkins* at 390 (Cook, J., concurring). For purposes of a sufficiency analysis, this Court must view the evidence in the light most favorable to the State. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We do not evaluate credibility, and we make all reasonable inferences in favor of the State. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991). The evidence is sufficient if it

allows the trier of fact to reasonably conclude that the essential elements of the crime were proven beyond a reasonable doubt. *Id*.

{¶15} Ms. Paul argues the State produced insufficient evidence because the State failed to affirmatively identify Ms. Paul as the perpetrator of the crime. However, the record does not reflect that the State failed to affirmatively identify Ms. Paul as the offender. Officer Cory Seiferth, the officer who took Ms. Paul into custody, identified Ms. Paul from the witness stand. Ms. Paul's daughter also identified her from the witness stand. At the conclusion of the State's case, the State asked the trial court to let the record reflect that the witnesses made those identifications, and Ms. Paul did not object to the record reflecting those identifications.

{¶16} With respect to whether the State presented sufficient evidence to sustain Ms. Paul's conviction, Ms. Paul was convicted of two counts of murder and one count of felonious assault for the death of S.S. At sentencing, the trial court merged the counts, and Ms. Paul was sentenced for murder in violation of R.C. 2903.02(A). R.C. 2903.02(A) states: "[n]o person shall purposely cause the death of another[.]"

{¶17} A review of the record shows the State presented sufficient evidence to establish Ms. Paul purposefully caused the death of S.S. The State presented both police officer testimony and body camera footage of the victim's dying declaration that Ms. Paul was the one who injured her. The State also presented the testimony of Ms. Paul's daughter, who testified she saw Ms. Paul swinging her hand up and down over S.S.'s body. Ms. Paul's daughter also testified she had to pull her mother off of the victim. Additionally, the medical examiner testified S.S. died as a result of the stab wounds inflicted by Ms. Paul.

{¶18} The evidence was sufficient to support Ms. Paul's conviction. Accordingly, Ms. Paul's first and fifth assignments of error are overruled.

## ASSIGNMENT OF ERROR II

**MS. ROCHELLE PAUL'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE CONSTITUTION (CLAUSE XIV, SECTION 1, UNITED STATES CONSTITUTION).**

**{¶19}** In her second assignment of error, Ms. Paul argues her conviction was against the manifest weight of the evidence. For the following reasons, we disagree.

**{¶20}** As this Court has previously stated:

[i]n determining whether a criminal conviction is against the manifest weight of the evidence an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the fact[-]finder's resolution of the conflicting testimony." *Thompkins*, 78 Ohio St.3d at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982).

**{¶21}** Moreover, an appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases. *Otten* at 340. "[W]e are mindful that the jury is free to believe all, part, or none of the testimony of each witness." *State v. Gannon*, 9th Dist. Medina No. 19CA0053-M, 2020-Ohio-3075, ¶ 20. (Internal quotations omitted.) "This Court will not overturn a conviction on a manifest weight challenge only because the jury found the testimony of certain witnesses to be credible." *Id*. "[T]he jury is best able to view witnesses and observe their demeanor, gestures and voice inflections, and use these observations

in weighing the credibility of the proffered testimony." *State v. Cook*, 9th Dist. Summit No. 21185, 2003-Ohio-727, ¶ 30, quoting *Giurbino v. Giurbino*, 89 Ohio App.3d 646, 659 (8th Dist.1993).

**{¶22}** Having reviewed the record, we cannot conclude this is an exceptional case where the jury lost its way by convicting Ms. Paul. In addition to other testimony and evidence, the jury heard testimony from Ms. Paul's daughter that she witnessed Ms. Paul above the victim striking her, and that Ms. Paul's daughter had to pull her off the victim. The police officer testimony and body camera footage showed the victim identify Ms. Paul as her attacker. Additionally, Ms. Paul did admit to stabbing S.S. during her own testimony.

**{¶23}** Based upon this record, this is not an exceptional case that warrants reversal. The jury, as factfinder, was tasked with determining the credibility of the witness' testimony and evidence in reaching its verdict. Accordingly, the jury did not clearly lose its way and create such a manifest miscarriage of justice that Ms. Paul's conviction must be reversed, and a new trial ordered.

**{¶24}** Accordingly, Ms. Paul's second assignment of error is overruled.

**ASSIGNMENT OF ERROR III**

**THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING MS. ROCHELLE PAUL'S MOTION TO SUPPRESS.**

**{¶25}** In her third assignment of error, Ms. Paul argues the trial court erred in denying her motion to suppress. For the following reasons, we disagree.

**{¶26}** A motion to suppress evidence presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.*, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Thus, a reviewing court "must accept the trial court's findings of fact if they are

supported by competent, credible evidence." *Burnside* at ¶ 8. "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id*., citing *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist.1997).

{¶27} "When a suspect is questioned in a custodial setting, the Fifth Amendment requires that he receive *Miranda* warnings to protect against compelled self-incrimination." *State v. Wesson*, 137 Ohio St.3d 309, 2013-Ohio-4575, ¶ 34. "The State has the burden of proving by the preponderance of the evidence that a defendant's waiver of *Miranda* rights was knowing, intelligent, and voluntary." *State v. Dunlap*, 9th Dist. Summit No. 28762, 2018-Ohio-3658, ¶ 11. The waiver must have been "'a free and deliberate choice'" of the accused rather than a product of "'intimidation, coercion, or deception.'" *State v. Dailey*, 53 Ohio St.3d 88, 91 (1990), quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986). Further, it "'must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'" *Dailey* at 91, quoting *Moran* at 421. Courts "review the totality of the circumstances in determining whether a suspect has voluntarily waived his *Miranda* rights." *State v. Rafferty*, 9th Dist. Summit No. 26724, 2015-Ohio-1629, ¶ 33.

{¶28} The question of whether law enforcement officials complied with *Miranda* and the question of whether a confession was voluntary "are analytically separate inquires.'" *State v. Anderson*, 9th Dist. Summit Nos. 30081, 30082, 30083, 2023-Ohio-2364, ¶ 35, quoting *State v. Porter*, 2d Dist. Montgomery No. 22369, 2008-Ohio-4627, ¶ 14. Due Process requires the exclusion of an involuntarily induced statement even when the strictures of *Miranda* have been satisfied or are inapplicable. *Rafferty* at ¶ 37; *see also State v. Antoline*, 9th Dist. Lorain No. 02CA008100, 2003-Ohio-1130, ¶ 21. To determine whether a confession was voluntary, courts

apply the same totality of the circumstances test that applies when courts assess the voluntariness of a *Miranda* waiver. *State v. Clark*, 38 Ohio St.3d 252, 261 (1988). The totality of the circumstances "includes 'e.g., the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement.'" *State v. Lather*, 110 Ohio St.3d 270, 2006-Ohio-4477, ¶ 9, quoting *State v. Dixon*, 101 Ohio St.3d 328, 2004-Ohio-1585, ¶ 25. The Supreme Court of Ohio has recognized that "the use of an inherently coercive tactic by police is a prerequisite to a finding of involuntariness." S*tate v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, ¶ 71. *See also Wesson*, 2013-Ohio-4575, at ¶ 35; *State v. Snow*, 9th Dist. Summit No. 19742, 2000 WL 670664, *2 (May 24, 2000). A court need not assess the totality of the circumstances if there is no evidence of such tactics. *Perez* at ¶ 71. "Evidence of use by the interrogators of an inherently coercive tactic (e.g., physical abuse, threats, deprivation of food, medical treatment, or sleep) will trigger the totality of the circumstances analysis." *State v. Osie*, 140 Ohio St.3d 131, 2014-Ohio-2966, ¶ 93, quoting *Clark* at 261.

{¶29} Ms. Paul was transported in handcuffs by the Akron Police to the Akron Police Department and placed in an interview room. Sergeant Looney and Detective Taylor of the Akron Police Department entered the interview room. The following exchange then occurred:

MS. PAUL:      How long do I have to wait for a lawyer?

[PAUSE]

MS. PAUL:      Just whenever they show up? COVID….

OFFICER:      Yeah. Well. We can't - It's hard for us to answer that, we like to talk to you still.

SGT. LOONEY:      We wanna know what's…

DET. TAYLOR: This will be our last time being able to talk to you. If you do um get a lawyer but after that, I mean, we just have to go off of what you already you know, talked to other people about.

OFFICER: [Inaudible] Sorry…

MS. PAUL: I'm not being weird but I totally need a lawyer.

SGT. LOONEY: OK.

DET. TAYLOR: OK. Alright.

SGT. LOONEY: Alright. That's fine.

[Officers begin standing up to leave]

MS. PAUL: I mean, I'll still talk to you.

SGT. LOONEY: I'm sorry?

MS. PAUL: I'll still talk to you.

OFFICER: Well….

MS. PAUL: Cuz I totally like…

OFFICER: You feel like you do but you still wanna talk to us.

MS. PAUL: Yah. I just know it's gonna take forever for me to get a lawyer.

SGT. LOONEY: Usually it's… what's today? Today is, uh

DET. TAYLOR: This day now? It's the 13th.

SGT. LOONEY: Yah, it's January 13th now. So, let's talk about… We just wanna make sure we're clear because we're recording so we wanna be clear on the record. You mentioned a lawyer but you still wanna talk to someone about what happened so that means you're waiving your right.

MS. PAUL: Right! Yah, I know.

SGT. LOONEY: I just wanna make sure it's clear.

DET. TAYLOR: We don't wanna make any mistakes.

MS. PAUL: I can't afford a lawyer, so you guys are gonna get me one anyway.

SGT. LOONEY: Yeah, but we just wanna make sure we're clear that you wanna talk to us.

MS. PAUL: 100% we're clear.

OFFICER: OK.

SGT. LOONEY: Alright, we appreciate that.

DET. TAYLOR: So, What uh… Let's just go from the beginning, does that make it easier for you?

MS. PAUL: No.

DET. TAYLOR: OK, where ya wanna start at? You start wherever you're comfortable to start.

MS. PAUL: [Crying]

DET. TAYLOR: I know it's hard. [Interview continues]

**{¶30}** In denying Ms. Paul's motion to suppress, the trial court reasoned:

In the present case, the Court finds Defendant Paul did in fact waive her right to counsel. While she initially inquired about a lawyer and made reference to the length of time it would take to obtain one, it was at her request that the interrogation continued. In fact, when she stated, "I'm not being weird but I totally need a lawyer," both officers responded "OK," and began to leave the room. It was at Defendant Paul's insistence that the officers sat back down and began speaking again, when she stated, "I mean… I'll still talk to you." At that point, in an effort to clarify Defendant Paul's wishes, Detectives made it clear the interview was being recorded and inquired whether she still wanted to speak to them: "[w]e just wanna make sure we're clear because we're recording… you still wanna talk to someone about what happened so that means you're waiving your right." Defendant Paul affirmed she understood and reiterated that she was clear about her choice, "100% we're clear," she said.

Furthermore, there is no evidence that Detectives Looney and/or Taylor engaged in any coercive or threatening behavior in an effort to persuade Defendant Paul to speak to them. The interview, in its entirety, lasted less than an hour and a half, and throughout the time she was given water and asked if they could "get [her] anything else." After the initial discussion about counsel, at no point did Defendant revisit

the idea of speaking to a lawyer or ask if that was possible. Therefore, based on the foregoing, the Court finds Defendant knowingly, voluntarily and intelligently waived her right to counsel.

Based upon the totality of circumstances, this Court determines that Defendant Rochelle Paul did knowingly, voluntarily and intelligently waive her right to counsel.

{¶31} Ms. Paul challenges on appeal the trial court's factual finding that she waived her right to counsel. Based on this record, however, we cannot say the trial court erred in denying Ms. Paul's motion to suppress. After saying she "totally need[ed] a lawyer[,]" Ms. Paul told the officers "I mean… I'll still talk to you." After the officers asked her to clarify whether she understood that continuing to speak to them would be waiving her right, Ms. Paul replied "100% we're clear[.]" Additionally, and importantly, Ms. Paul has not argued she did not understand her *Miranda* rights or that her statements were involuntary. The record does not reveal that Sergeant Looney and Detective Taylor made any threats or promises to Ms. Paul or engaged in any coercive treatment. Ms. Paul also does not argue there was any physical deprivation or mistreatment before she waived her right to counsel.

{¶32} Therefore, based on this record, Ms. Paul waived her right to counsel, and the trial court did not err in denying her motion to suppress. Accordingly, Ms. Paul's third assignment of error is overruled.

### ASSIGNMENT OF ERROR IV

**THE TRIAL COURT ABUSED ITS DISCRETION BY ADMITTING THE STATE OF OHIO'S EXHIBITS OVER MS. ROCHELLE PAUL'S OBJECTION.**

{¶33} In her fourth assignment of error, Ms. Paul argues the trial court erred in admitting certain evidence presented by the State over objection of defense counsel. Specifically, Ms. Paul alleges the trial court erred in admitting pictures of the crime scene and body camera footage. For the following reasons, we disagree.

{¶34} The decision to admit or exclude evidence lies in the sound discretion of the trial court. *State v. Brown*, 9th Dist. Lorain No. 04CA008510, 2005-Ohio-2141, ¶ 4. This Court, therefore, reviews the trial court's decision regarding the admission or exclusion of evidence under an abuse-of-discretion standard of review. *State v. Arnott*, 9th Dist. Summit No. 21989, 2005-Ohio-3, ¶ 35. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). An abuse of discretion demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993). When applying the abuse-of-discretion standard, this Court may not substitute its judgment for that of the trial court. *Id.*

{¶35} Ms. Paul argues the trial court abused its discretion by admitting State's Exhibits 3-20, which were photographs of Ms. Paul's home and the living room where the crime occurred. However, a review of the record shows Ms. Paul failed to contemporaneously object to the body camera footage and photographs when they were introduced as exhibits to the jury. "When a defendant fails to contemporaneously object to the testimony, identification, and publication [of items of evidence] introduced as exhibits to the jury, and only later objects, after the close of the State's evidence when the [items] are being admitted into evidence, she forfeits the matter for review on appeal." *State v. Watkins*, 9th Dist. Summit No. 30430, 2023-Ohio-2757, ¶ 20, citing *State v. Henry*, 9th Dist. Summit No. 27758, 2016-Ohio-680, ¶ 10. Because Ms. Paul failed to contemporaneously object, her arguments are only subject to plain error review. *Id.* This Court will not sua sponte undertake a plain-error analysis if the defendant fails to do so. *See State v. Carter*, 9th Dist. Summit No. 30332, 2023-Ohio-3452, ¶ 19; *State v. Krowiak*, 9th Dist. Medina No. 21CA0003-M, 2022-Ohio-413, ¶ 37; *State v. McCraw*, 9th Dist. Summit No. 14CA0009-M,

2015-Ohio-3809, ¶ 5; *State v. Hairston,* 9th Dist. Lorain No. 05CA008768, 2006-Ohio-4925, ¶ 9. Ms. Paul has not made a plain error argument on appeal and this Court will not make one on her behalf.

{¶36} Accordingly, Ms. Paul's fourth assignment of error is overruled.

## ASSIGNMENT OF ERROR VI

**THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR WHEN IT REMOVED A JUROR IN VIOLATION OF SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE 1, §10 OF THE OHIO CONSTITUTION.**

## ASSIGNMENT OF ERROR VII

**THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR WHEN IT INSTRUCTED THE JURY TO RESUME DELIBERATIONS AFTER IT REMOVED A JUROR AND REPLACED THE JUROR WITH AN ALTERNATE IN VIOLATION OF SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, § 10 OF THE OHIO CONSTITUTION.**

{¶37} In her sixth and seventh assignments of error, Ms. Paul argues the trial court erred when it replaced Juror 9 after deliberations had begun, and also further erred when it replaced Juror Alternate 2. For the following reasons, we disagree.

{¶38} "This Court reviews the trial court's decision to remove a juror for an abuse of discretion." *State v. Sales-Hilton*, 9th Dist. Summit No. 26351, 2012-Ohio-5651, ¶ 13. An abuse of discretion means that the trial court acted unreasonably, arbitrarily, or unconscionably. *Blakemore,* 5 Ohio St.3d at 219. In addition to an abuse of discretion, Ms. Paul must show that she was prejudiced by the court's action. *Sales-Hilton* at ¶ 13. "Absent a record showing that the court abused [its] discretion which resulted in prejudice to the defense, the regularity of the proceedings is presumed." *Id*., citing *State v. Brown,* 2d Dist. Montgomery No. 24541, 2012-Ohio-1848, ¶ 46.

{¶39} Crim.R. 24(G) and R.C. 2945.29 govern the removal and replacement of jurors during criminal trials. *State v. Zaragoza*, 2d Dist. Montgomery No. 26706, 2016-Ohio-144, ¶ 18, citing *State v. Cunningham*, 2d Dist. Clark No. 10-CA-57, 2012-Ohio-2794, ¶ 45. R.C. 2945.29 permits a court to replace a juror with an alternate "[i]f, before the conclusion of the trial, a juror becomes sick, *or for other reason* is unable to perform his duty[.]" (Emphasis added.) "[T]he substitution of an alternate juror for a regular juror for reasonable cause is within the prerogatives of the trial court and does not require the consent of any party." *State v. Gaines*, 8th Dist. Cuyahoga No. 82301, 2003-Ohio-6855, ¶ 38, citing *United States v. Warren*, 973 F.2d 1304, 1308-1309 (6th Cir.1992). Neither R.C. 2945.29 nor Crim.R. 24 requires the court to conduct a hearing to confirm the juror's inability to fulfill her service. *Id.* at ¶ 39.

{¶40} Additionally, "[i]f an alternate replaces a juror after deliberations have begun, the court must instruct the jury to begin its deliberations anew." Crim.R. 24(G)(1). "'The purpose of such instruction is to negate any possibility of coercion or intimidation of the substitute juror.'" *Sales–Hilton* at ¶ 16, quoting *State v. Elersic*, 11th Dist. Lake Nos. 2000-L-062 and 2000-L-164, 2001 WL 1497192, *13, citing *State v. Miley*, 77 Ohio App.3d 786, 791-793 (12th Dist.1991).

{¶41} Here, Ms. Paul argues that the trial court failed to notify or obtain the consent of the parties before replacing Juror 9, who had fallen ill and failed to show up for deliberations. "The substitution of an alternate juror for a regular juror for reasonable cause is within the prerogatives of the trial court and does not require the consent of any party." *State v. Jennings*, 8th Dist. Cuyahoga No. 104626, 2017-Ohio-8224, ¶ 11, citing *State v. Gaines*, 8th Dist. Cuyahoga No. 82301, 2003-Ohio-6855, ¶ 38, citing *Warren*, 973 F.2d at 1309. *See also State v. Henderson*, 2d Dist. Montgomery No. 28241, 2020-Ohio-6, ¶ 47; *State v. Setty*, 4th Dist. Adams No.

20CA1106, 2020-Ohio-4318, ¶ 30. Therefore, we cannot say the trial court abused its discretion in replacing Juror 9.

{¶42} After the trial court seated Juror Alternate 2, the jury deliberated that afternoon for 37 minutes with Juror Alternate 2. At that point, the trial court, having realized it failed to instruct the jury to begin deliberations anew pursuant to Crim.R. 24, removed Juror Alternate 2 and replaced Juror Alternate 2 with Juror Alternate 3. After Juror Alternate 3 was seated, the trial court provided the following curative instruction to the jury:

| THE COURT: | So now that [Juror Alternate 3] is joining you for deliberations, you are required to start your deliberations anew, from the start, So, anything that has happened this far is to be forgotten and you are to start fresh today with your now new 12 jurors. Does everybody agree to do that? |
|---|---|
| THE JURY: | Yes. |
| THE COURT: | All heads are nodding. Any questions about that, how that works? No. All right. |

Ms. Paul argues the jury pool was exposed to the opinions of Juror Alternate 2 without the instruction for 37 minutes. However, when the trial court seated Juror Alternate 3, the trial court instructed the jury to begin deliberations anew. "A jury is presumed to follow the instructions, including curative instructions, given it by a trial judge." *State v. Garner*, 74 Ohio St.3d 49, 59 (1995). Additionally, there is no evidence in the record establishing any juror was influenced by the opinions of Juror Alternate 2, or any evidence that the jury failed to follow the trial court's instruction. Therefore, because Ms. Paul has not demonstrated prejudice as she is required by law to demonstrate, and because the trial court provided the curative instruction after Juror Alternate 3 was seated, we cannot say the trial court abused its discretion in its replacement of Juror 9.

{¶43} Accordingly, Ms. Paul's sixth and seventh assignments of error are overruled.

## ASSIGNMENT OF ERROR VIII

**THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING MS. PAUL'S MOTION FOR MISTRIAL.**

**{¶44}** In her eighth assignment of error, Ms. Paul argues the trial court erred when it denied her motions for a mistrial. For the following reasons, we disagree.

**{¶45}** A mistrial must be declared "only when the ends of justice so require and a fair trial is no longer possible." *State v. Franklin*, 62 Ohio St.3d 118, 127 (1991), citing *Illinois v. Somerville*, 410 U.S. 458, 462-463 (1973) and *Arizona v. Washington*, 434 U.S. 497, 505-506 (1978). Because "the trial judge is in the best position to determine whether the situation in [the] courtroom warrants the declaration of a mistrial[,]" the decision is one committed to the discretion of the trial court. *State v. Glover*, 35 Ohio St.3d 18, 19 (1988). "This Court reviews a trial court's decision to deny a mistrial for an abuse of discretion." *See State v. Rones*, 9th Dist. Summit No. 30073, 2023-Ohio-60, ¶ 16; *State v. Yost*, 9th Dist. Summit No. 30625, 2024-Ohio-545, ¶ 29.

**{¶46}** "To determine whether the alleged misconduct resulted in prejudice, a court must consider (1) the nature of the error, (2) whether an objection was made, (3) whether the trial court provided corrective instructions, and (4) the strength of the evidence against the defendant." (Internal quotations omitted.) *State v. Stevens*, 9th Dist. Summit No. 30336, 2023-Ohio-2153, ¶ 18, quoting *State v. Edwards*, 9th Dist. Summit No. 28164, 2017-Ohio-7231, ¶ 13. "A jury is presumed to follow the instructions, including curative instructions, given it by a trial judge." (Internal quotations and citations omitted.) *Stevens* at ¶ 28.

**{¶47}** Here, Ms. Paul made two motions for a mistrial, once after Juror Alternate 2 was seated for Juror 9, and again after the trial court dismissed Juror Alternate 2 and seated Juror Alternate 3. The trial court gave Ms. Paul the option of seating Juror Alternate 3 because she had objected to Juror Alternate 2 being seated without a curative instruction to begin deliberations

anew. After seating Juror Alternate 3, the trial court provided the instruction as required by Crim.R. 24(G)(1) . The trial court also gave the parties the option to voir dire the jury as to whether or not there was any tainting of the jury with respect to the 37 minutes that the jury spent deliberating with Juror Alternate 2 and without the curative instruction. Ms. Paul declined the offer, and in fact objected to the voir dire of the jury by the prosecution or the defense, so the trial court stated that the court would "check on their status" and issued the curative instruction instead. Additionally, the evidence against the defendant was overwhelming, including a videotaped dying declaration of the victim, testimony from Ms. Paul's daughter, and Ms. Paul's own admission that she stabbed the victim. Therefore, on this record, we cannot conclude the trial court abused its discretion in denying Ms. Paul's motions for a mistrial.

{¶48} Accordingly, Ms. Paul's eighth assignment of error is overruled.

## ASSIGNMENT OF ERROR IX

**APPELLANT, ROCHELLE PAUL, WAS DENIED [HER] RIGHT TO DUE PROCESS AND OF ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION BECAUSE HER TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE.**

{¶49} In her ninth assignment of error, Ms. Paul argues she was denied effective assistance of counsel because her trial counsel failed to object to the State's alleged failure to identify her and because her trial counsel failed to sufficiently argue the Crim.R. 29 motion. For the following reasons, we disagree.

{¶50} "[I]n Ohio, a properly licensed attorney is presumed competent." *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, ¶ 62. To prevail on a claim of ineffective assistance of counsel, Ms. Paul must establish (1) that her counsel's performance was deficient to the extent that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"

and (2) that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A deficient performance is one that falls below an objective standard of reasonable representation. *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. To establish prejudice, Ms. Paul must show that there existed a reasonable probability that, but for her counsel's errors, the outcome of the proceeding would have been different. *State v. Sowell*, 148 Ohio St.3d 554, 2016-Ohio-8025, ¶ 138. "[D]ebatable trial strategies do not constitute ineffective assistance of counsel." *State v. Maldonado*, 9th Dist. Lorain No. 01CA007924, 2002-Ohio-2205, ¶ 7, citing *State v. Gales*, 9th Dist. Lorain No. 00CA007541, 2000 WL 1729454, *8 (Nov. 22, 2000) and *State v. Clayton*, 62 Ohio St.2d 45, 49 (1980).

{¶51} As stated above, upon review of the record, the State established the identification of Ms. Paul as the perpetrator of the crime through the testimony of several witnesses. Accordingly, Ms. Paul's counsel's failure to make an objection based on the State's alleged failure to establish the identification of Ms. Paul, when the State did establish the identification of Ms. Paul, did not render her counsel's performance deficient.

{¶52} Further, upon review of the record, even though it appears that trial counsel's choice to argue the Crim.R. 29 motion in the manner it was argued can be considered as a matter of trial tactics or strategy, we found above that the evidence produced by the prosecution passed a Crim.R. 29 challenge. Consequently, Ms. Paul has not established on this record that her trial counsel's performance was deficient to support this allegation of ineffective assistance of counsel.

{¶53} Accordingly, Ms. Paul's ninth assignment of error is overruled.

III.

{¶54} Ms. Paul's nine assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETTY SUTTON
FOR THE COURT

STEVENSON, P. J.
CONCURS.

CARR, J.
CONCURS IN JUDGMENT ONLY.

APPEARANCES:

KIMBERLY STOUT-SHERRER, Attorney at Law, for Appellant.

ELLIOT KOLKOVICH, Prosecuting Attorney, and C. RICHLEY RALEY, JR., Assistant Prosecuting Attorney, for Appellee.